COMMISSION ON HOSPITALS AND HEALTH CARE
*v.* THE STAMFORD HOSPITAL
(13378)

HEALEY, SHEA, GLASS, COVELLO and HULL, Js.

Argued June 10—decision released August 16, 1988

*Paul E. Knag,* with whom, on the brief, were *John F. Spindler* and *Barbara M. Schellenberg,* for the appellant (defendant).

*Maite Barainca,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh* and *Richard J. Lynch,* assistant attorneys general, for the appellee (plaintiff).

SHEA, J. The defendant Stamford Hospital (hospital) has appealed from a judgment of the trial court enjoining the hospital from instituting open heart surgery and coronary angioplasty programs without the prior approval of the plaintiff commission on hospitals and health care (commission) as required by General Statutes § 19a-154. On appeal, the hospital claims that the trial court erred in holding that (1) § 19a-160-53 of the Regulations of Connecticut State Agencies is consistent with § 19a-154 and, therefore, is valid; and (2) the commission's deficiency letter was issued within the time required under § 19a-160-53. We find no error.

The trial court found the following facts. On May 21, 1986, the hospital mailed to the commission a letter requesting forms on which to submit a certificate of need application relating to open heart surgery. In response, the commission sent to the hospital a copy of the commission's "CORE" application form, which is the form to be used by all applicants for a certificate of need.

On July 14, 1986, the hospital hand-delivered to the commission an application for a certificate of need for open heart surgery and coronary angioplasty programs. On July 15, 1986, the hospital mailed a letter with attachments to the commission concerning the hospital's application for a certificate of need. The attachments consisted of four corrected pages and twenty-six

additional pages, constituting the hospital's audited financial statements, which were to be added to the application. The July 15 letter and the accompanying material were received by the commission on July 23, 1986.

On August 6, 1986, the commission, after reviewing the application, sent a five page letter to the hospital stating that on July 23, 1986, the commission had received the hospital's application and had found it deficient. The commission requested a significant amount of additional information. The hospital did not respond to the commission's letter.

In a letter to Commissioner Nancy Watters dated December 8, 1986, legal counsel for the hospital indicated that he had advised the hospital that it was authorized to proceed with open heart surgery because the commission had not denied or modified the hospital's application within ninety days of its hand-delivered submission. Counsel for the hospital stated that it was his opinion that the deficiency letter of August 6 was invalid, because it was sent more than ten days after the original application date of July 14, 1986, even though the deficiency letter referred to July 23, 1986, as the triggering date.

On May 16, 1987, the commission, pursuant to General Statutes § 19a-159,[1] filed a petition for enforcement of the requirements of General Statutes § 19a-154,[2]

---

[1] "[General Statutes] Sec. 19a-159. (Formerly Sec. 19-73q). JUDICIAL ENFORCEMENT. The superior court on application of the commission or the attorney general, may enforce, by appropriate decree or process, any provision of this chapter or any act or any order of the commission rendered in pursuance of any statutory provision."

[2] "[General Statutes] Sec. 19a-154. (Formerly Sec. 19-73l). APPROVAL PROCESS RE TRANSFER OF OWNERSHIP OR CONTROL PRIOR TO LICENSE; INTRODUCTION OF ADDITIONAL FUNCTIONS OR SERVICES; DECREASES IN SERVICES; INCREASES IN STAFFING. NEW OR CONTINUING OPERATIONS REQUIRING COMMISSION APPROVAL. HEARINGS ON APPLICATIONS OF A SIMILAR NATURE; COORDINATION OF ACTIVITIES. (a) Any health care facility or insti-

seeking to enjoin the hospital from instituting open heart surgery and coronary angioplasty programs without the prior approval of the commission. On November 9, 1987, the trial court entered a permanent order

tution, as defined in subsection (a) of section 19a-490 . . . which intends to introduce any additional function or service into its program of health care . . . shall prior to the proposed date . . . of institution of such function or service . . . and in accordance with the schedule established by the commission pursuant to subsection (b) of this section, submit to the commission a request for permission to undertake such function or service or increase its staff. The commission shall make such review of the proposal as it deems necessary . . . in the case of the introduction of an additional function or service, ascertaining the availability of such service or function at other inpatient rehabilitation facilities, health care facilities or institutions or state health care facilities or institutions within the area to be served, the need for such service or function within such area and any other factors which the commission deems relevant to a determination of whether the facility or institution is justified in introducing such additional functions or services into its program or increasing its staff . . . . The commission shall grant, modify or deny such request within ninety days of the receipt thereof, except that upon request of the applicant, the ninety-day review period may be extended for an additional fifteen days if the commission or the health systems agency for the area to be served has requested additional information subsequent to the commencement of the commission's review period. Failure of the commission to act on such request within such ninety-day period shall be deemed approval thereof, except that if the failure to act results from a tie vote of the commission on a motion to approve, modify or deny the request, the ninety-day review period shall automatically be extended fifteen days. Upon a showing by such facility or institution that the need for such function or service or increase in staff is of an emergency nature, the commission may waive the requirement that the request for such permission be submitted, in accordance with the schedule established by the commission pursuant to subsection (b) of this section, provided such request shall be submitted at least ten days before the proposed date of institution of the function or service.

"(b) In conducting its activities under this section and section 19a-155, the commission shall hold hearings on applications of a similar nature at the same time and shall coordinate its activities under said sections with the activities of health systems agencies including the holding of joint hearings with such agencies where possible. The commission shall adopt regulations in accordance with the provisions of chapter 54, establishing a schedule for the submission of such applications which shall provide for all completed applications pertaining to similar types of services, facilities or equipment affecting the same health service area to be considered in relation to each other and reviewed at least twice a year."

prohibiting the hospital from instituting open heart surgery and coronary angioplasty programs. This appeal followed.[3]

## I

The hospital claims that § 19a-160-53[4] of the Regulations of Connecticut State Agencies is inconsistent with General Statutes § 19a-154 and therefore is invalid. Section 19a-154 requires any health care facility or institution that intends to introduce any additional function or service into its program of health care to "request the permission" of the commission prior to instituting any such function or service. Section § 19a-160-53 defines an application as "all the required components and any special components set forth in these regulations." The hospital contends that the phrase "request the permission" does not allow for the interpretation taken by the commission in the regulations, namely, that such a "request" means a completed application. See Regs., Conn. State Agencies § 19a-160-53 (a).

The commission was created by the legislature to ensure the efficient utilization of health care resources and to control the burgeoning costs of health care.

---

[3] The hospital appealed to the Appellate Court. On March 9, 1988, this court transferred the case to itself, pursuant to Practice Book § 4023.

[4] "[Regulations of Connecticut State Agencies] Sec. 19a-160-53. DATE OF FILING, COMPONENTS, DEFICIENCIES

"The date of filing of any application or required submission with the commission under Sec. 19a-151 (b) or (c), 19a-152, 19a-156, 19a-154, 19a-155, or 19a-164 through 19a-166, G.S., shall be the date that the application is received by the commission.

"(a) An application shall consist of all the required components and any special components set forth in these regulations.

"(b) All deficiencies in any filed petition or application to the commission shall be brought to the attention of the petitioner or applicant in a written communication mailed to the petitioner or applicant not later than ten (10) business days after receipt of the petition or application at the commission's office and the application or petition shall be no longer before the commission."

*Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 497, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). To achieve those ends, the legislature granted the commission broad powers over the budgets of hospitals and over the initiation of new programs and capital expenditures by health care institutions. Id., 497–98; see General Statutes §§ 19a-150, 19a-151, 19a-153 (a), 19a-154 (a), 19a-156 (a). Further, the legislature has expressly directed the commission to adopt such regulations as will implement the commission's purposes; General Statutes § 19a-160; and the validly enacted regulations of an administrative agency carry the force of statutory law. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 497; *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 363, 417 A.2d 358 (1979). A party attacking such a regulation has the burden of showing beyond a reasonable doubt that it is in conflict with the legislation. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981).

The hospital claims that the legislature focused on the receipt of the request for permission, not on the accompanying information. We disagree. Section 19a-154 specifies a number of factors the commission must consider in determining whether to approve a request for a new function or service. These factors include "the availability of such service or function at other inpatient rehabilitation facilities . . . within the area to be served, the need for such service or function within such area," and other factors that the commission deems relevant to the decision. General Statutes § 19a-154. General Statutes § 19a-153 lists additional criteria that the commission must consider in its certificate of need determinations.[5] Obviously, the commission cannot

---

[5] "[General Statutes] Sec. 19a-153. (Formerly Sec. 19-73k). CONSIDERATIONS IN COMMISSION DELIBERATIONS; WRITTEN FINDINGS. AVAILABILITY

make an informed judgment regarding such proposals unless the commission has before it the information that pertains to the statutory factors. The enumeration of these factors, therefore, suggests that the legislature was concerned with the information to be submitted with a request and did not contemplate that the commission would act upon a bare "request for permission." Further, it is the well established practice of this court to accord great deference to the time-tested construction given a statute by the agency charged with its enforcement. *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 599, 522 A.2d 771 (1987); *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496.

The commission's regulations are a reasonable construction of the statutory phrase "request for permission" because they further the legislative intent of having the commission consider a multitude of factors before making its determinations.[6] Under § 19a-160-53

OF INFORMATION. USE OF CHARITABLE GIFTS. (a) In its deliberations under any of sections 19a-151 to 19a-156, inclusive, the commission shall take into consideration and make written findings concerning each of the following criteria: The relationship of the proposal to the health systems plan and the state health plan; the relationship of the proposal to the applicant's long-range plan; the financial feasibility of the proposal, and its impact on the applicant's rates and financial condition; the proposal's contribution to quality, accessibility and cost-effectiveness of health care delivery in the region; the relationship of the proposed change to the applicant's current utilization statistics; the teaching and research responsibilities of the applicant; the special characteristics of the patient-physician mix of the applicant; the voluntary efforts of the applicant in improving productivity and containing costs; and any other factors which the commission deems relevant, including, in the case of a facility or institution as defined in subsection (c) of section 19a-490, such factors as, but not limited to, the business interests of all owners, partners, associates, incorporators, directors, sponsors, stockholders and operators and the personal backgrounds of such persons."

[6] Our decisions involving requests for jury instructions on lesser included offenses, although a different context, lend further support to the proposition that the commission could reasonably have interpreted "request" to mean something more than a bare request. In *State* v. *Ostroski,* 201 Conn. 534, 518 A.2d 915 (1986), for example, we held that the defendant's request

the commission must send a deficiency letter to the applicant notifying it that its request is not properly before the commission. The ninety day review period does not begin to run, therefore, because the application, lacking adequate accompanying information, has not enabled the commission to consider the statutory factors set forth in §§ 19a-153 and 19a-154. Because the legislature is presumed to have acted rationally; *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985); it would not have specified the factors to be considered by the commission and, at the same time, have prevented it from establishing procedures that would allow the commission to collect the information needed to evaluate those factors.[7]

The hospital contends that the commission should be required to deny requests containing insufficient infor-

to charge was not appropriate, because the request contained no supporting facts at all and did not cite legal authority sufficiently. We emphasized that requests for jury instructions must be more than bare requests. Id., 558-59. We conclude that General Statutes § 19a-154 does not preclude the commission from reaching the similar conclusion that the statutory phrase, "request for permission," means more than a bare request.

[7] The hospital cites *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 244 A.2d 391 (1968), for the proposition that the ninety day review period under General Statutes § 19a-154 necessarily begins on receipt of a "request for permission," even if the request lacks supporting information. *Finn* is readily distinguishable. *Finn* involved the failure of the agency to pass on a subdivision proposal. In the case at hand, there was no inaction by the commission. Rather, it was quite obvious that the hospital had been informed that its application was incomplete.

The hospital claims also that the 1987 amendment to § 19a-154 supports its position that § 19a-160-53 of the Regulations of Connecticut State Agencies is inconsistent with § 19a-154. In 1987, the legislature amended § 19a-154 to provide that the commission may extend the review period for up to thirty days if the applicant has not filed in a timely manner information deemed necessary by the commission. See Public Acts 1987, No. 87-192. This amendment was not effective at any time when the hospital's application was pending before the commission, and therefore, does not affect this case. In any event, there is no indication that the amendment was intended to replace or affect the deficiency letter procedure of § 19a-160-53.

mation, rather than allow the staff to issue deficiency letters. The commission's procedure, however, provides a more efficient mechanism for processing requests, while the hospital's approach would delay the process. A deficiency letter notifies an applicant of a preliminary determination that the commission will not be able to make an informed decision based on the information provided. The application is no longer before the commission, but the commission retains the application and requires only that the applicant address the deficiencies, rather than resubmit an entirely new application. In this case, the hospital stated that its application was comprised of more than 130 pages of a completed questionnaire as well as many pages of supporting documents. The commission's regulations requiring that the hospital correct only the deficiencies set forth in the letter, therefore, saved this applicant the considerable time and expense involved in submitting an entirely new application.

The hospital claims that even though the commission must issue deficiency letters within ten days, the commission could needlessly prolong the application process through repeated requests for additional information. First, we note that the hospital has never questioned the appropriateness of the August 6 request for information. Second, § 19a-160-53 limits the commission to one deficiency letter. If the applicant complies with the specific requests for additional information, the commission cannot thereafter raise unrelated claims of deficiencies in an application. The commission may determine, however, that the applicant has failed to comply with the initial request for additional information, in which case the application remains "no longer before the Commission." Regs., Conn. State Agencies § 19a-160-53. Although the hospital characterizes the deficiency letters as "not subject to appeal," the hospital would not have been without a remedy if it had

wished to challenge the propriety of a request for further information. General Statutes § 4-176[8] provides that an agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency. The challenge to a regulation, therefore, should begin with a petition to the agency itself. See *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 509 A.2d 1050 (1986); *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell,* 199 Conn. 609, 508 A.2d 743 (1986). An adverse ruling is appealable under General Statutes § 4-183; *Beck* v. *Board of Trustees,* 32 Conn. Sup. 153, 155, 344 A.2d 273 (1975); and the failure of an agency to issue a ruling permits action under General Statutes § 4-175. *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd,* 197 Conn. 554, 560–61, 499 A.2d 797 (1985). In this case, therefore, the hospital could have filed with the commission a petition for a declaratory ruling pursuant to § 4-176, claiming that § 19a-160-53 was inapplicable to the hospital's situation, because the additional information requested by the staff was unnecessary for consideration of its application.

The hospital maintains that the commission's practice of having its staff issue deficiency letters amounts to an unauthorized delegation of decision-making power,

---

[8] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling, in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

and therefore, the commission itself should be required to make the decisions regarding the completeness of an application. We agree with the hospital that the decisions of the staff are not decisions of the commission but, as stated above, health care facilities have adequate remedies for contesting staff decisions in §§ 4-175 and 4-176.[9]

We have consistently held that administrative agencies may exercise wide discretion in the performance of their duties. *Patry* v. *Board of Trustees,* 190 Conn. 460, 478, 461 A.2d 443 (1983); *Riley* v. *State Employees' Retirement Commission,* 178 Conn. 438, 442, 423 A.2d 87 (1979). Further, in addressing the practical realities of the administrative process, we have recognized that "[c]ompetent subordinates may sift and analyze evidence, recommend findings of fact and conclusions of law, and draft orders for an administrative agency as an integral part of the process." *Connecticut Natural Gas Corporation* v. *PUCA,* 183 Conn. 128, 138, 439 A.2d 282 (1981). "Sound principles of organization demand that those at the top be able to concentrate their attention upon the larger and more important questions of policy and practice, and that their time be freed, so far as possible, from the consideration of the smaller and less important matters of detail." Hearing on H.R. 4732, before House Comm. on Interstate

---

[9] General Statutes § 19a-158 provides that health care facilities aggrieved by a decision of the commission may appeal in accordance with General Statutes § 4-183. Because a deficiency letter sent pursuant to § 19a-160-53 of the Regulations of Connecticut State Agencies does not constitute a decision by the commission, however, an applicant may not challenge the propriety of a deficiency letter through the procedure set forth in § 19a-158. Cf. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 196 Conn. 451, 493 A.2d 229 (1985) (appeal pursuant to § 19a-158 from commission's rejection of hospital's budget proposal); *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 438 A.2d 103 (1980) (appeal pursuant to § 19a-158 from commission's denial of request to purchase and operate CT scanner). General Statutes §§ 4-175 and 4-176 provide the remedy for challenging a deficiency letter.

and Foreign Commerce, 72d Cong., 2d Sess. 7 (1933); see also *Fleming* v. *Mohawk Wrecking & Lumber Co.,* 331 U.S. 111, 120–21, 67 S. Ct. 1129, 91 L. Ed. 1375 (1947); *Morgan* v. *United States,* 298 U.S. 468, 481, 56 S. Ct. 906, 80 L. Ed. 1288 (1936). We conclude that the commission's regulations provide an efficient method for reviewing the adequacy of the voluminous financial, medical and scientific information that ordinarily accompanies a certificate of need application.

## II

The hospital claims that even if the commission could lawfully adopt § 19a-160-53, the commission's August 6 deficiency letter was not issued within the time required under § 19a-160-53. Section § 19a-160-53 requires that all deficiencies in an application be brought to the attention of the applicant not later than ten days after receipt of the application. The hospital maintains that the ten day period should run from July 14, 1986, the date of its first submission of a certificate of need application, and not July 23, 1986, the date on which the commission received the hospital's supplemental filing that had been mailed on July 15, 1986. This claim essentially challenges the trial court's factual finding that the submission received on July 23, 1986, was a new application.

Because it is not the function of this court to retry facts; *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 124–25, 544 A.2d 170 (1988); the scope of our review is limited to determining whether the trial court's factual findings were clearly erroneous. *McGaffin* v. *Roberts,* 193 Conn. 393, 409, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). The hospital states that the July 23 submission "was not a new application, or an application in any sense of the word." Rather, it was simply the submission of additional and corrected infor-

mation that became part of the application already on file. The trial court, however, found that the hospital had failed to submit the facility's audited financial statements in its original submission of July 14, 1986: "It was not until July 23, 1986 that these *required* components were submitted in the attempt by the Hospital to file a complete application." (Emphasis in original.) The trial court stated that these additions substantially modified and supplemented the hospital's July 14 application. " 'We will not reverse the decision of the trial court unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981).' " *Mallory* v. *Mallory,* 207 Conn. 48, 55, 539 A.2d 995 (1988). We conclude that the trial court's determination that the July 23 submission was a new application was not clearly erroneous in view of the evidence.

There is no error.

In this opinion the other justices concurred.