## EASTER HOUSE, INC. *v.* DEPARTMENT OF CHILDREN AND YOUTH SERVICES ET AL.
### (13798)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued March 7—decision released April 17, 1990

*Katherine C. Callahan,* with whom were *Robert M. DeCrescenzo* and, on the brief, *Thomas J. Shortell,* for the appellants (plaintiffs).

*Susan T. Pearlman,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellees (defendants).

SHEA, J. The plaintiff, Easter House, Inc., a private not-for-profit Illinois corporation licensed as an adoption agency in that state, brought this administrative appeal after the defendant, Amy B. Wheaton, the commissioner of the department of children and youth services (DCYS), acting through the attorney general, had issued a letter, on February 7, 1989, ordering it to cease its activities in the placement and adoption of Connecticut children. The defendants moved to dismiss the action for lack of subject matter jurisdiction, claiming that the appeal had not been taken from a final decision of the agency in a "contested case" and that administrative remedies had not been exhausted,[1] both as required by General Statutes § 4-183 (a).[2] The trial

---

[1] The trial court decided that the appeal had not been taken from a final decision of the agency and did not address the claim of failure to exhaust administrative remedies. The plaintiff claims that no such administrative remedy is available because it cannot satisfy one of the statutory licensing requirements. Because we conclude that the appeal has not been taken from a decision in a "contested case" and thus should be dismissed for lack of jurisdiction, we do not consider the exhaustion issue.

[2] General Statutes § 4-183 (a), when this appeal was brought to the Superior Court, provided: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

An amendment to this statute became effective on July 1, 1989, after the appeal had been commenced.

court granted the motion to dismiss for lack of a decision in a "contested case" and the plaintiff has appealed from that judgment. We find no error.

There is no controversy about the subordinate facts, which may be ascertained from the complaint, from affidavits supporting and opposing the motion to dismiss filed by the parties and from testimony presented at a combined hearing on both the motion to dismiss and a motion of the plaintiff for a stay of the DCYS order.[3] The plaintiff, a child placement agency licensed by the state of Illinois, has been arranging for out-of-state children to be adopted in Connecticut since 1979. It has no license from this state, as required by General Statutes § 17-49a[4] for any agency seeking to "place out in

[3] The motion for a stay was denied by the trial court. The plaintiff has raised this ruling as an issue on appeal in this court, but we do not address it in view of our conclusion that jurisdiction is lacking.

[4] "[General Statutes] Sec. 17-49a. LICENSING OF CHILD-PLACING AGENCIES. TEMPORARY PLACEMENT DEFINED. LIMIT ON COMMISSIONER'S ABILITY TO INSPECT. No person, agency, association, corporation, institution, society or other organization, except a parent, an adult relative as specified by section 17-82 or guardian of any child shall place out in any free, working or adoption home or board out any child either on a temporary on permanent basis without a license obtained from the commissioner of children and youth services, provided a person, agency, association, corporation, institution, society or other organization may place a child or children in a temporary home not receiving compensation from the state for a period not exceeding twenty-one days. For the purposes of this section and section 17-49b, placement on a 'temporary basis' means a placement of a child for a period not exceeding forty-two days. Application for such a license shall be in a form furnished by the commissioner, and shall state the location of the principal place of business of the applicant, its organization or corporate name, its purposes and the name, title and degree of professional training of each of its staff members engaged in carrying out its stated purposes. Any such applicant shall consent to such inspection, review and supervision of all acts in relation to child placing as are reasonably necessary to enable the commissioner to perform his duties under section 17-50. The provisions of this section with regard to the commissioner's authority to inspect, review and supervise all acts in relation to child placing under section 17-50 shall be limited to inspection, review and supervision of the applicant under this section and shall not include inspection, review or supervision of the homes in which a child is placed on a temporary basis."

any . . . adoption home . . . any child either on a temporary or permanent basis," nor has it ever applied for such a license. The plaintiff cannot obtain a license as a child placement agency in this state because it is not a tax exempt organization, as General Statutes § 17-49b (a)[5] requires.

The inability of the plaintiff to obtain a license pursuant to § 17-49a has not been regarded by DCYS as any reason for withholding permission for the placement of out-of-state children for adoption by Connecticut families pursuant to General Statutes § 17-51.[6]

---

[5] "[General Statutes] Sec. 17-49b. ADOPTION OF REGULATIONS CONCERNING CHILD-PLACING AGENCIES, REQUIREMENTS; EXEMPTION. (a) The commissioner of children and youth services shall adopt regulations in accordance with chapter 54 setting forth: (1) Standards for licensing of agencies, corporations, insitutions, societies and associations and other organizations which place children on a temporary basis as defined in section 17-49a; (2) standards for the licensing of agencies, associations, corporations, institutions, societies and other organizations which place children on a permanent basis. The regulations shall require a licensee licensed on or after March 9, 1984, to have a minimum of two staff persons who are qualified by a combination of education and work experience, and be a nonprofit organization qualified as a tax-exempt organization under Section 501 (c) (3) of the Internal Revenue Code of 1954, as from time to time amended."

[6] "[General Statutes] Sec. 17-51. PLACEMENT OF CHILD FROM ANOTHER STATE. Any person or public or private agency, corporation or organization, before bringing or sending any child into the state for the purpose of placing or caring for him in any home or institution, either free or for board, shall make application to the commissioner of children and youth services, giving the name, the age and a personal description of such child, the name and address of the person, home or institution with whom the child is to be placed, and such other information as may be required by said commissioner. Such person or institution shall be licensed by said commissioner under the provisions of sections 17-48 and 17-50. When the permission of said commissioner has been received for the placement of such child, the person, agency, corporation or organization, before placing him, shall undertake: (1) That if, prior to becoming eighteen years of age or being adopted, such child becomes a public charge, such person, agency, corporation or organization will, within thirty days after notice requesting his removal has been given by said commissioner, remove such child from the state; (2) that such person, agency, corporation or organization will report

Since 1979, DCYS has regularly granted such permission and does not object to continuation of this activity by the plaintiff. The plaintiff does not claim to have received DCYS approval for placement of a Connecticut child, except in one instance that occurred after the letter directing the plaintiff to cease this activity had been issued.[7] After DCYS discovered that the plaintiff had been placing Connecticut children with families in both this state and other states, it issued the letter dated February 7, 1989, ordering it to cease doing so.

In dismissing the appeal for lack of subject matter jurisdiction, the trial court concluded that the complaint failed to allege that the plaintiff had been licensed as a child-placing agency in this state or that it had been approved by DCYS to place a Connecticut child for adoption, except in the instance previously mentioned. The complaint, however, does allege that the plaintiff "was approved as an out-of-state child-placing agency to conduct child-placing activities in the State of Connecticut by DCYS." General Statutes § 4-166 (3), at the time of the appeal, defined "license" to include "the whole or any part of any agency permit, certificate, *approval,* registration, charter, or similar form of per-

annually, and more often if requested to do so by said commissioner, as to the location and condition of the child so long as he remains in the state prior to his becoming eighteen years of age or prior to his legal adoption, and shall, at the discretion of said commissioner, execute and deliver to said commissioner a bond payable to the state, and in the penal sum of one thousand dollars, with surety or security acceptable to the attorney general, conditioned on the performance of such undertaking. The provisions of this section shall not apply in the case of (a) the bringing of a child to the home of any relative who is a resident of this state, (b) any summer camp operating ninety days or less in any consecutive twelve months or (c) any educational institution as determined by the state board of education."

[7] DCYS approved the finalization of the adoption of a Connecticut child by a Connecticut family with which the child had been living following its placement by the plaintiff.

mission required by law . . . ." (Emphasis added.) The ambiguity as to whether these "approved" child-placing activities included the placement of Connecticut children was resolved by the testimony at the hearing on the motion to dismiss. This testimony indicated that the DCYS approvals alleged in the complaint related solely to the placement of out-of-state children in Connecticut pursuant to § 17-51.

Whether the DCYS letter directing the plaintiff to cease engaging in the placement and adoption of Connecticut children constitutes a final decision in a "contested case" depends upon whether the plaintiff had obtained a license to conduct those activities in this state that the letter has effectively revoked. Section 4-182 (c) of our Uniform Administrative Procedure Act[8] (UAPA) provides that "[n]o revocation . . . of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license." DCYS concedes that no such notice or opportunity to be heard was given to the plaintiff prior to issuance of the letter. A "contested case," as defined by General Statutes § 4-166 (2),[9] is "a proceeding, including but not restricted to . . . licens-

---

[8] General Statutes § 4-182 (c) provides: "No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

[9] General Statutes § 4-166 (2), when this appeal was commenced, provided: " 'Contested case' means a proceeding, including but not restricted to rate-making, price fixing and licensing, in which the legal rights, duties or priv-

ing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an gency after an opportunity for hearing . . . . " If the plaintiff had a license to conduct the activities that the DCYS letter prohibited it from engaging in, therefore, § 4-182 (c) entitled the plaintiff to notice and an opportunity for a hearing prior to such a license revocation. The issuance of the letter, as the plaintiff argues, would then have been "a proceeding . . . in which the legal rights . . . of a party are required by statute [§ 4-182 (c)] to be determined by an agency after an opportunity for hearing" and thus would have satisfied the definition of a "contested case" in § 4-166 (2) so that the present appeal would be authorized by § 4-183 (a).

The jurisdictional issue, therefore, turns upon whether the plaintiff in fact had a license or an equivalent approval to engage in the placement and adoption of Connecticut children. Section 17-49a of our child welfare laws provides that "[n]o person, agency . . . or other organization . . . shall place out in any free, working or adoption home . . . any child either on a temporary or permanent basis without a license obtained from [DCYS]" and that "[a]pplication for such a license shall be in a form furnished by the commissioner . . . . " The plaintiff concedes that it has never held or even applied for a license as prescribed by § 17-49a. It maintains, however, that, because DCYS had approved its placement of out-of-state children in Connecticut homes for approximately ten years, these approvals constituted a license to place Connecticut children in homes in this state or in other states. The plaintiff relies upon § 4-166 of the UAPA, which defines

ileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include hearings referred to in section 4-168."

An amendment to this provision became effective on July 1, 1989.

"license" to include "the whole or part of any agency . . . *approval* . . . or similar form of permission required by law . . . ." (Emphasis added.) It contends that there is no statutory distinction between placing out-of-state children in Connecticut homes, which it has been doing for ten years with DCYS approval, and its more recent activity of placing Connecticut children, which DCYS seeks to prohibit.

DCYS maintains, however, that there is such a distinction and that any approval that it may have granted of the plaintiff's activities in this state related exclusively to the placement of out-of-state children in Connecticut homes pursuant to § 17-51, which does not require a license for such a child placement activity. Section 17-51 requires that "[a]ny person or . . . agency . . . before bringing or sending any child into the state for the purpose of placing or caring for him in any home or institution . . . shall make application to [DCYS], giving the name, the age and a personal description of such child, the name and address of the *person, home or institution* with whom the child is to be placed, and such other information as may be required by said commissioner. *Such person or institution* shall be licensed by said commissioner under the provisions of sections 17-48 and 17-50." (Emphasis added.) The possible ambiguity in the italicized reference to "[s]uch person or institution" in this statute is clarified by the reference to General Statutes § 17-48,[10] which applies to the licensing of child care

[10] "[General Statutes] Sec. 17-48. LICENSING OF CHILD-CARE FACILITIES. ANNUAL REPORT. No orphan asylum, children's home or similar institution, and no person or group of persons, whether incorporated for the purpose or not or any residential educational institution not exempted by the state board of education under the provisions of section 17-51 shall care for or board a child without a license obtained from the commissioner of children and youth services, except when such child has been placed with such institution, group or person by an agency holding a license from said commissioner and except for facilities providing child day care services as defined

facilities rather than child placement agencies. DCYS has consistently construed § 17-51 not to require a license for an out-of-state agency to place a child in Connecticut but to require only that the child be placed with a child care facility licensed pursuant to § 17-48 and General Statutes § 17-50.[11] The application that § 17-51

in section 19a-77. The manager or managers of each such institution and each such person or group of persons shall file with said commissioner an application for a license, in such form as he furnishes, stating the location where it is proposed to care for such child, the number of children whom it is planned to accommodate at that time and, in the case of an institution, the purpose of the institution and the names of its chief officers and of the actual superintendent in charge of the children within. The commissioner of children and youth services is authorized to fix the maximum number of children to be boarded and cared for in any such home or institution or by any such person or group of persons licensed by him. Each orphan asylum, children's home or similar institution, and each person or group of persons, holding a license under the provisions of this section, shall file annually, with the commissioner who issued the license, a report stating the number of children received and removed during the year, the number of deaths and the causes of death, the average cost of support per capita and such other data as he may prescribe.

[11] "[General Statutes] Sec. 17-50. INVESTIGATION. REPORT. PROVISIONAL LICENSE. REVOCATION POWER. APPEAL. The commissioner of children and youth services shall investigate the conditions stated in each application made to him under the provisions of section 17-48 and the commissioner shall investigate the conditions in each application under the provisions of section 17-49a and, if the commissioner finds such conditions suitable for the proper care of children, or for the placing out of children, under such standards for the promotion of the health, safety, morality and well-being of such children as he prescribes, shall issue such license as is required as promptly as possible, without expense to the licensee. If after his investigation the commissioner finds that the applicant, notwithstanding good faith efforts, is not able to fully comply with all the requirements he prescribes, but compliance can be achieved with minimal efforts, the commmissioner may issue a provisional license for a period not to exceed sixty days. The provisional license may be renewed for additional sixty-day periods, but in no event shall the total of such periods be for longer than one year. Before issuing any license, the commissioner shall give to the selectmen of the town wherein such licensee proposes to carry on the licensed activity ten days' notice in writing that the issuance of such license is proposed, but such notice shall not be required in case of intention to issue such license to any corporation incorporated for the purpose of caring for or placing such children. Each license so issued shall specify whether it is granted for child-caring

requires the out-of-state agency to file is for the purpose of obtaining "permission" from DCYS for the placement of a particular child. The grant of such permission does not imply approval of other child placement activities by the agency or authorize such activities in the future.

Section 17-49a, unlike § 17-51, is not restricted to the placement of out-of-state children, since it refers to the placement of "any child" and requires a child-placing agency to obtain a license before engaging in that activity. The fact that DCYS has construed § 17-51 to create an exception to the licensing requirement of § 17-49a for agencies seeking to place out-of-state children in Connecticut does not affect the application of the statute to all agencies engaged in the placement of Connecticut children. The permission DCYS has granted pursuant to § 17-51 for particular child placements sought by the plaintiff for out-of-state children, therefore, cannot reasonably be deemed approval of its activities in the placement of Connecticut children, as the plaintiff claims.

---

or child-placing purposes, shall state the number of children who may be cared for, shall be in force twelve months from date of issue, and shall be renewed for the ensuing twelve months, if conditions continue to be satisfactory to the commissioner. The commissioner shall also provide such periodical inspections and review as shall safeguard the well-being, health and morality of all children cared for or placed under a license issued by him hereunder and shall visit and consult with each such child and with the licensee as often as he deems necessary but at intervals of not more [than] ninety days. Each licensee under the provisions of this section shall file annually with the commissioner a report containing such information concerning its functions, services and operation, including financial data, as the commissioner requires. Any license issued under this section may be revoked by the commissioner for cause, after notice given to the institution, person or group of persons concerned and after opportunity for a hearing thereon. Any party whose application is denied or whose license is revoked by the commissioner may appeal from such adverse decision in accordance with the provisions of section 4-183. Appeals under this section shall be privileged in respect to the order of trial assignment."

The plaintiff also argues that a provision of General Statutes § 45-61c (a)[12] allowing a petition for termination of parental rights to be filed by "(4) a duly authorized officer of any child care agency or child-placing agency or organization . . . approved by [DCYS]," implies that "approved" in-state and out-of-state child placing agencies are on "equal footing" with respect to conducting child placement activities in Connecticut. It contends that, consequently, no distinction can be made between an agency licensed under § 17-49a and one that has been approved for placement of an out-of-state child in Connecticut pursuant to § 17-51. General Statutes § 45-61b (c),[13] however, defines a "child-placing agency" as "any agency within or without the state of Connecticut licensed or approved by [DCYS] *in accordance with sections 17-49a and 17-50, and in accordance with standards established by regulations of [DCYS].*" (Emphasis added.) Since the plain-

---

[12] "[General Statutes] Sec. 45-61c. PETITION TO TERMINATE PARENTAL RIGHTS. (a) Any of the following persons may petition the court of probate to terminate parental rights of all persons who may have parental rights regarding any minor child or for the termination of parental rights of only one parent provided the application so states: (1) Either or both parents, including a parent who is a minor; (2) the guardian of the child; (3) the selectmen of any town having charge of any foundling child; (4) a duly authorized officer of any child care agency or child-placing agency or organization or any children's home or similar institution approved by the commissioner of children and youth services; (5) a blood relative of the child, descended from a common ancestor not more than three generations removed from the child, if the parent or parents have abandoned or deserted the child; (6) the commissioner of children and youth services, provided the custodial parent of such minor child has consented to the termination of parental rights and the child has not been committed to the commissioner, and no application for commitment has been made; provided in any case hereunder where the minor child with respect to whom the petition is brought has attained the age of twelve, the minor child shall join in the petition."

[13] General Statutes § 45-61b (c) provides: " 'Child-placing agency' means any agency within or without the state of Connecticut licensed or approved by the commissioner of children and youth services in accordance with sections 17-49a and 17-50, and in accordance with standards established by regulations of the commissioner of children and youth services."

tiff has never been licensed pursuant to §§ 17-49a and 17-50, it does not satisfy this definition of a "child-placing agency" and, therefore, its officers are not qualified to petition for termination of parental rights under § 45-61c (a) (4).[14] We agree with the plaintiff that § 45-61b (c) in defining a "child-placing agency" makes no distinction between in-state and out-of-state agencies that have been "licensed or approved" by DCYS pursuant to §§ 17-49a and 17-50, but this even handed statutory treatment is of no benefit to the plaintiff, which has not been licensed or approved in accordance with those statutes.

Finally, the plaintiff relies upon § 17-49b-47[15] of the Regulations of Connecticut State Agencies, which provides for the approval by DCYS of "out-of-state private child-placing agencies seeking to place children in Connecticut for the purpose of foster care or adoption" and specifies the information to be furnished in

---

[14] The record does not indicate whether DCYS has granted approval of the plaintiff pursuant to General Statutes § 45-61b (c) for the purpose of allowing its officers to file a petition for the termination of parental rights.

[15] "[Regulations of Connecticut State Agencies] Sec. 17-49b-47. APPROVAL OF OUT-OF-STATE AGENCIES

"Out-of-state private child-placing agencies seeking to place children in Connecticut for the purpose of foster care or adoption shall provide:

"(a) A copy of their current license from the approving authority in their state. If no such license is issued, they must provide a reference statement from the approving authority stating they are authorized to place children in foster care and/or adoption.

"(b) Description of program must include that within its geographical area the agency does home studies; placements; supervision; and, if they conduct adoptive placements, finalization of adoptions. The agency must also agree to continuing responsibility for placement planning and replacement if the placement fails.

"(c) Such other information as the Department may require.

"(d) Notification to the Department of any significant agency changes after approval.

"(e) If the adoption is finalized prior to bringing or sending the child to Connecticut, the out-of-state agency involved is not required to be approved by the Department under Section 17-51 of the Connecticut General Statutes and the Interstate Compact on the placement of children does not apply."

applying for such approval. DCYS concedes that the plaintiff has been approved pursuant to this regulation in relation to its activities in placing out-of-state children in Connecticut and in conjunction with granting the "permission of [the] commissioner . . . for the placement of [an out-of-state] child," as required by § 17-51. DCYS maintains that the applicability of this regulation only to "out-of-state private child-placing agencies seeking to place children in Connecticut" as well as the reference in subsection (e) of the regulation to "bringing or sending the child to Connecticut" make it clear that a grant of approval pursuant to the regulation authorizes agency activities in the placement of only out-of-state children in this state. We agree with this interpretation of the regulation. Thus, the approval the plaintiff has obtained from DCYS as an out-of-state child placement agency pursuant to this regulation cannot be expanded to include the placement of Connecticut children, for which § 17-49a plainly requires a license issued in accordance with specified procedures that the plaintiff has not followed.

We conclude that the plaintiff has never obtained DCYS approval of its activities in the placement of Connecticut children and, therefore, that § 4-182 (c), requiring notice and opportunity for a hearing before a revocation of a "license," as defined in § 4-166 is inapplicable. Since there is no prior notice and hearing requirement absent a license, the issuance of the DCYS letter prohibiting such activities was not illegal and did not constitute a "contested case" within § 4-166. Accordingly, the plaintiff's appeal was not taken from a decision in a contested case, as required by § 4-183 (a), and the trial court lacked subject matter jurisdiction over the appeal, which was properly dismissed.

There is no error.

In this opinion the other justices concurred.