[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
In their complaint, the plaintiffs allege, in relevant part, as follows. On April 5, 2002, Patrick Leach was convicted of public possession of alcohol by a minor in violation of General Statutes §30-89 (b). (Complaint, p. 2 ¶ 4.) On April 22, 2002, Patrick Leach was notified by the department that his motor vehicle operator's license was suspended for one hundred fifty days pursuant to General/ Statutes § 14-111e.[1] Plaintiffs' counsel requested a hearing before the department to contest the license suspension. (Complaint, p. 2 ¶¶ 5, 6.)
On May 15, 2002, a hearing was held before the department, at which time plaintiffs' counsel claimed that in order for department to suspend his motor vehicle operator's license under § 14-111e, Patrick Leach had to be convicted of both the purchase and possession of alcohol. (Complaint, p. 3 ¶¶ 8, 9.) Subsequently, the hearing officer for the department upheld Patrick Leach's license suspension. (Complaint, pp. 3-4 ¶¶ 10, 12, 13.) On June 4, 2002, the plaintiffs appealed to this court purportedly under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-183.
The issue in this case is whether the court lacks subject matter jurisdiction on the basis that the plaintiffs have not appealed from a final decision pursuant to General Statutes § 4-183 (a).[2] UnderSummit Hydropower Partnership v. Commr, of Environmental Protection,226 Conn. 792, 811 (1993), to be a contested case under § 4-166 (2), there must be a proceeding in which the agency "is required by statute to provide an opportunity for a hearing to determine a party's legal rights or privileges." See also Terese B. v. Commissioner of Children Families, 68 Conn. App. 223, 236 (2002) (applicable statute itself must provide for a hearing). Here, the statute leading to the license suspension, § 14-111e, does not provide for a hearing. Further, the CT Page 13787 granting of a constitutionally-mandated hearing in the case of a license revocation, see Bell v. Burson, 402 U.S. 535, 542-43, 91 S.Ct. 1586,29 L.Ed.2d 90 (1971), does not provide the statutorily-mandated hearing of § 4-166 (2). Instead, Bell instructs that a license cannot be taken without "procedural due process," which, in the context of license revocation cases, means "notice and a meaningful opportunity to be heard." See Reitzer v. Board of Trustees of State Colleges,2 Conn. App. 196, 202-03 (1984) (where the court determined that the term "opportunity for hearing" which is referred to as being "required by statute" under General Statutes § 4-166 (2) does not include such an opportunity required by constitution).
The plaintiff argues that the UAPA provision § 4-182 (c) supplies the requisite statutory basis to find a contested case. Section 4-182 (c) provides in part as follows: "No . . . suspension . . . of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license."
The case of Commissioner of Consumer Protection v. FOIC, 207 Conn. 698
(1988) illustrates an agency's duties under § 4-182 (c). There, the Supreme Court described the operation of the provision where a physician was subject to possible license revocation:
 A compliance meeting is held when an investigation by drug control agents of the department of consumer protection reveals evidence supporting the revocation of a physician's drug registration. The compliance meeting provides a physician with the opportunity to show that the drug control agent's report is without foundation, and is designed to foster voluntary settlements between physicians and the department of consumer protection so as to avoid the need for formal adjudicatory proceedings.[3]
Id., 699. Later, the Supreme Court refused to "overturn the conclusion of the trial court that compliance hearings do not constitute . . . proceedings." Id., 704.
Other jurisdictions having a provision on notice and the opportunity to show compliance when licenses are revoked or suspended[4] have reached a similar result. Based upon this language, for example, the Georgia Court of Appeals found that the licensee was entitled to no hearing other CT Page 13788 than the compliance conference under the statute. Hinson v. Georgia StateBd. of Dental Examiners, 218 S.E.2d 162, 163 (Ga.App. 1975)[5]
On May 9, 1995, the Appellate Court rejected a claim that the "opportunity to show compliance," afforded by § 4-182 (c), constituted a statutorily-mandated hearing creating a contested case. InDadiskos v. Connecticut Real Estate Commission, 37 Conn. App. 777, 782-83
(1995), the Appellate Court declared:
 This section of our statutes clearly deals with a situation in which a revocation, suspension, annulment or withdrawal of any license is contemplated. The opportunity for a showing of compliance may be by conference or otherwise and does not constitute a hearing. Such cannot be found to create a "contested case."[6]
Just three weeks after the Appellate Court issued its decision inDadiskos, our Supreme Court heard oral argument in PARCC, Inc. v.Commission on Hospitals Heath Care, 235 Conn. 128 (1995). InPARCC, a nursing home applied to the commission on hospitals and health care for a reauthorization of the construction of a ten-bed expansion of its facility. While the agency initially granted approval, this authorization was later revoked based on the agency's interpretation of a newly-enacted statute. PARCC attempted an administrative appeal, but the trial court dismissed the appeal on the ground that there was no statutorily-required hearing to determine PARCC's legal right to construct the addition.
On appeal, PARCC relied upon § 4-182 (c) to meet the statutory hearing requirement and argued further that the action of the defendant in disallowing its intended construction amounted to the revocation of a license. The briefs of the parties, obviously filed weeks before, do not discuss Dadiskos. Neither Dadiskos, nor its holding that § 4-182 (c) does not create a contested case, was mentioned by the parties at the PARCC oral argument.[7] The arguments in the briefs and at oral argument were consumed with whether this agency action in fact constituted a revocation of a "license" such that the provisions of § 4-182 (c) might apply.
On August 15, 1995, the Supreme Court ruled in PARCC, Inc. v.Commission on Hospitals Heath Care, supra, 235 Conn. 128 that the trial court had erred in looking for a hearing requirement only among the statutes administered by the commission.
CT Page 13789
 The plaintiff contends that because the defendant was required by the UAPA to conduct a hearing before denying the plaintiffs application for reauthorization, the trial court improperly dismissed its appeal. In support of this claim, the plaintiff argues that the defendant granted it a license, as defined in § 4-166 (6) of the UAPA, to proceed with construction of the ten bed addition to the facility. The plaintiff further argues that when the defendant denied the plaintiffs application, the denial constituted a revocation of that license, and that § 4-182 (c) requires notice and an opportunity for a hearing before such a revocation. We agree.
(Footnote omitted.) PARCC, Inc. v. Commission on Hospitals HeathCare, supra, 235 Conn. 138.
 The issue in this case is whether the defendant was statutorily required to conduct a hearing.
 [I]f the UAPA required the defendant to conduct a hearing before denying the plaintiffs application, then the defendant had a statutory duty to conduct a hearing.
 The UAPA states that no revocation . . . of any license is lawful unless . . . the agency gave notice . . . to the licensee . . . and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. . . . General Statutes § 4-182 (c). Thus, if, as the plaintiff argues, the defendant's denial of the plaintiffs request for reauthorization was the revocation of a license, as defined by the UAPA, then the defendant had a statutory duty to conduct a hearing before denying that request.
Id., 138-39.
The Supreme Court then decided that the Commission's denial constituted the revocation of a "license" and held that PARCC was entitled to an administrative appeal.
The Supreme Court's PARCC opinion, in finding that § 4-182 (c) CT Page 13790 provides the requisite statutory hearing provision, directly conflicts with the Appellate Court's Dadiskos decision and several decisions interpreting the same UAPA provision in other states. It appears that the Supreme Court did not have the opportunity to consider fully the body of law that encompasses the Dadiskos line of cases or even what it had written earlier in Commissioner of Consumer Protection v. FOIC, supra,207 Conn. 698.[8] In the DMV context, PARCC also causes difficulties, because there are license-revocation statutes which allow for a hearing, see, e.g., § 14-227b (b), provisions that specifically deny an appeal after a hearing, see, e.g, § 14-37a, and provisions, as in this case, that are silent on the right to a hearing.
It may very well be, as the plaintiff argues in its supplemental memorandum, that the Supreme Court would have rejected Dadiskos in light of Hickey v. Commissioner of Motor Vehicles, 170 Conn. 136, 145
(1976)[9]. This misses the issue, however. It appears that the Supreme Court did not benefit from the clear, recent precedent of the Appellate Court, adopted in several other jurisdictions, based upon the UAPA.
This very deficiency in the way PARCC was presented to the Supreme Court raises the issue of whether this court is now free under the rules of stare decisis to render a decision resolving the conflict. The parties were asked to brief the question of whether the court has the authority to distinguish PARCC on the ground that because of the overlap in timing the Supreme Court did not have an opportunity to directly consider theDadiskos holding.
The department argues that the court may rely on Dadiskos, not PARCC, because the central issue in PARCC was whether the plaintiff in PARCC was contesting the denial of a "license," and that the Supreme Court merely "assumed" that § 4-182 (c) governed. This is, however, not what the Supreme Court itself stated: "We conclude, however, that the trial court improperly limited its focus to [§ 19a-155a and Public Acts 1993, No. 93-406]. In addition . . . the defendant is governed by the UAPA. Accordingly, if the UAPA required the defendant to conduct a hearing before denying the plaintiffs application, then the defendant had a statutory duty to conduct a hearing." Id., 139. The court then concluded that § 4-182 (c) provided a statutory requirement for a hearing. The Supreme Court's decision is therefore a "holding," and not just dicta as the department contends.
The department also refers to the case of Waterbury v. Washington,260 Conn. 506, 539 (2002) where the Supreme Court overruled prior precedent because the parties in the prior cases did not draw the court's CT Page 13791 attention to the language of a key statutory provision and its effect on the court's interpretation of two other statutes. The department then states: "The Court's reasoning in Waterbury authorizes this Court to consider a matter of statutory construction in this case that was not presented by the parties or contemplated by the Supreme Court inPARCC. . . . Like the Court in Waterbury, this court is confronted with the troubling fact that legal analysis of an issue critical to the outcome of this case was not adequately briefed, argued or brought to the attention of the state Supreme Court in an otherwise precedential holding. The rationale of Waterbury, therefore, entitles this court to conduct an informed analysis of whether this case is controlled by the substantive analysis and holding in theDadiskos case rather than the language and dicta in thePARCC case." (Defendant's Reply Brief, p. 14.)
Whether this court agrees with the department on the merits, however, it is in a different position from the Supreme Court, which has great flexibility in evaluating prior cases. Conway v. Wilton, 238 Conn. 653,661 (1996). The trial court cannot "reexamine or reevaluate Supreme Court precedent." Brunswick v. Inland Wetlands Commission, 25 Conn. App. 543,553 (1991), rev'd on other grounds, 222 Conn. 541 (1992). At most as Judge DiPentima has declared: "[T]he trial court is bound by Supreme Court precedent. . . . Before a court abandons the rule of a higher court, it must clearly show that the established rule is incorrect and harmful. . . . Ferrigno v. Cromwell Development Associates,44 Conn. App. 439, 443 (1997)." (Brackets omitted; citation omitted; internal quotation marks omitted.) Murphy v. Hillside Village CondominiumAssn., Inc., Superior Court, judicial district of New Haven at Meriden, Docket No. 254486 (July 23, 1992, DiPentima, J.) (20 Conn.L.Rptr. 158). This court certainly cannot find that the result in PARCC is either "incorrect" or "harmful."
Under these circumstances, this court concludes that it must follow thePARCC holding. The issue has arisen in the past. See C. Wyzanski, Jr., "A Trial Judge's Freedom and Responsibility," 65 Harvard L. Rev. 1281, 1299 (1952): "Where the precedent has not been impaired, the balance is in favor of the trial judge following it in his decree and respectfully stating in his accompanying opinion such reservations as he has. The entry of the decree preserves that `priority and place' which Shakespeare reminded us were indispensable to justice. Moreover, the reservation in the opinion promotes the growth of the law in the court where it most counts. For if the criticism of the precedent be just, the appellate court will set matters straight, and any trial judge worthy of his salt will feel complimented in being reversed on a ground he himself suggested." CT Page 13792
Therefore, the motion to dismiss is denied. As discussed previously with the parties, the department may proceed to raise the appropriateness of the ex parte stay issued in this case and the court officer shall issue a briefing schedule.
 ___________________ Henry S. Cohn, Judge