[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Statement of Appeal
The plaintiffs, Fairfield Resources Management, Inc. (FRM); Fairfield Resources, Inc. (FR); and Rock Acquisition Limited Partnership (RALP), appeal to the Superior Court, pursuant to General Statutes § 29-355, from the action of the defendant, Wayne A. Gravius, the Town of Brookfield's Fire Marshal. On October 21, 1994, Gravius suspended a blasting permit, which he had issued on September 27, 1994 to Joel Kanute of Dyno New England, Inc. (Dyno). Gravius based his decision on the advice of Francis J. Collins, counsel to the Brookfield Zoning Commission. Collins advised Gravius that because FR, located at 5 North Mountain Road in Brookfield, Connecticut, violated Brookfield Zoning Regulations § 242-302, Gravius should suspend Dyno's blasting permit for FR's quarry. Gravius also based his decision on the fact that William McNamara, attorney for the Town of Brookfield, agreed with Collins' advice. CT Page 3807
Background
On September 27, 1994, Joel Kanute applied for a permit to discharge explosives for Dyno at FR's quarry. (Return of Record [ROR], Item 26: October 21, 1994 letter from Wayne A. Gravius, Fire Marshal to Mr. Arthur Sibley, Jr. of Dyno New England, Inc., with a copy of the blasting permit attached.) On September 27, 1994, Gravius granted Kanute's permit application and provided that the blasting permit would expire on October 27, 1994. (ROR, Item 26.)
Subsequent to granting Dyno the blasting permit, the Town of Brookfield's office of the fire marshal recorded that it received numerous complaints regarding the blasting at FR's quarry. (ROR, Item 16: September 28, 1994 Blasting Complaint with September 28, 1994 report from DRS Consultants, Inc. to Fairfield Resources quarry attached; ROR, Item 18: October 6, 1994 Blasting Complaint; ROR, Item 20: October 12, 1994 Blasting Complaint; ROR, Item 22: October 21, 1994 Blasting Complaint.)
At the Brookfield Zoning Commission's regular meeting on October 13, 1994, the Commission denied the plaintiffs' request for a permit to remove "natural resources from Residential District R-80 amounting to 400,000 tons (180,000 cubic yards) of material per year by a maximum of up to 300 trucks per day, [and] involving excavating, blasting, screening, rock crushing and processing." (ROR, Item 24: Minutes of October 13, 1994 meeting of the Brookfield Zoning Commission, p. 8.) The Commission voted four to one to deny the plaintiffs' application because it conflicted with the Brookfield Zoning Regulations §§ 242-302.C.2, 302.C.2a, 302.4, 302.9, 302.F and 303.A. (ROR, Item 24, p. 9.)
On October 20, 1994, Francis J. Collins, counsel to the Brookfield Zoning Commission, responded to Gravius' request for advice as to whether he should allow blasting to continue at FR's quarry. (ROR, Item 25: October 20, 1994 letter from Attorney Francis J. Collins to Wayne A. Gravius, Fire Marshal, with attachments.) Attorney Collins wrote to Gravius stating "that no further blasting should be authorized . . . as the Brookfield Zoning Commission, at its October 13, 1994 meeting, denied Fairfield Resources's application for a natural resources removal permit. Any further mining . . . constitutes a violation of Section 242-302[1] of the Brookfield Zoning Regulations." (ROR, Item 25.) CT Page 3808
Subsequently, Gravius sent Arthur Sibley, Jr., of Dyno, a letter dated October 21, 1994. In the letter, Gravius stated that based on the advice of Francis Collins, counsel to the Brookfield Zoning Commission, and upon confirmation by Town Attorney William McNamara, he had suspended Dyno's blasting permit for FR's location at 5 North Mountain Road because it violated Brookfield Zoning Regulations § 242-302. (ROR, Item 26: October 21, 1994 letter from Wayne A. Gravius, Fire Marshal to Mr. Arthur Sibley, Jr. of Dyno New England, Inc., with a copy of the blasting permit attached.) The letter continued that the suspension of the blasting permit began at noon on October 21, 1994. (ROR, Item 26.)
Gravius then faxed to Trooper Colon a copy of his letter to Arthur Sibley, Jr. (ROR, Item 27: October 21, 1994 facsimile from Wayne Gravius to Trooper Colon with attachments.) Thereafter, Gravius typed an undated document entitled "Comments" in which he recorded his actions between October 18, 1994 and October 21, 1994, when he suspended Dyno's blasting permit. (ROR, Item 28: Undated memo to the file of Wayne Gravius.)
On October 25, 1994, Gravius sent a letter to Attorney McNamara requesting that Attorney McNamara indicate in writing that he had advised Gravius to suspend the blasting permit because FR violated Brookfield Zoning Regulations § 242-302. (ROR, Item 29: October 25, 1994 letter from Wayne A. Gravius, Fire Marshal to Attorney William J. McNamara, Jr.)
Parties' Arguments
The plaintiffs argue that they were statutorily entitled to the blasting permit, which Gravius suspended on October 21, 1994. The plaintiffs also argue that Gravius and the Town of Brookfield lacked the authority to suspend the blasting permit. Further, the plaintiffs contend that only the State Fire Marshal can revoke a blasting permit, and then only for good cause. Additionally, the plaintiffs argue that the "defendants violated the plaintiffs' due process rights by summarily suspending and denying the plaintiffs' blasting permits without first providing plaintiffs with an opportunity to be heard." (Plaintiffs' Brief, p. 6.)
Moreover, the plaintiffs argue that the "decision of the defendant Gravius to revoke the blasting permit was illegal and/or improper because the defendant Gravius considered factors CT Page 3809 outside the statutory and regulatory requirements in making his decision. To wit, Attorney Francis Collins and First Selectman Bonnie Smith exerted improper influence over Gravius to revoke the blasting permit . . . ." (Plaintiffs' Brief, p. 12.) Last, the plaintiffs argue that Gravius should not have considered the alleged violation of the Brookfield Zoning Regulations at FR's quarry, when he made his determination regarding the blasting permits.
In response, the defendants argue that because "the Commissioner of Public Safety has the exclusive jurisdiction over the regulation of the storage, transportation and use of explosives . . . it necessarily follows that a local fire marshal acts as the agent of the Commissioner in issuing permits under the provisions of C.G.S. § 29-349(d) and that any action or decision of the local fire marshal with reference to blasting permits is subject to review by the Commissioner, who may overrule or modify an action or decision made by the local fire marshal." (Defendants' Brief, p. 7.) Therefore, the defendants conclude that "[o]nly when an appeal of the suspension and an application for re-issuance of the suspended permit had been denied by both the local fire marshal and the Commissioner of Public Safety would Kanute and Dyno have exhausted their administrative remedies and . . . since they are not parties to this appeal, this Court lacks jurisdiction to entertain the appeal." (Defendants' Brief, p. 8.)
Additionally, the defendants argue that because "[i]t is a general rule that the court lacks jurisdiction to consider an appeal where no practical relief can flow to the appellant from the decision of the court," and this court is without the power to grant the relief requested by the plaintiffs, the court should dismiss this appeal. (Defendants' Brief, p. 9.) Specifically, the defendants argue that because the blasting permit contained an expiration date of October 27, 1994, the permit cannot be reinstated and, therefore, reversing the suspension of the permit would be meaningless. Further, the plaintiffs' requested legal fees in their claim for relief. The defendants, however, argue that the court does not possess the authority to grant such relief because an administrative appeal is a statutory remedy, and neither General Statutes § 29-355 nor General Statutes § 4-183 permit the recovery of attorney's fees.
Accordingly, the defendants argue that the court should dismiss this appeal because the plaintiffs failed to exhaust CT Page 3810 their administrative remedies, the plaintiffs joined neither Kanute nor Dyno, who are indispensable parties to the appeal, and the court cannot grant the plaintiffs' requested relief.
Discussion
I. Whether the plaintiffs failed to exhaust their administrative remedies.
The defendants in their brief set forth the statutory provisions governing the roles of the commissioner of the Department of Public Safety (DPS) and the local fire marshal under General Statutes § 29-349 et seq. The defendants' conclusions do not follow from the plain language of General Statutes § 29-349 et seq.
The defendants argue that a local fire marshal acts as the agent of the DPS commissioner in issuing permits, pursuant to General Statutes § 29-349(d), and "that any action or decision of the local fire marshal with reference to blasting permits is subject to review by the Commissioner, who may overrule or modify an action or decision by the local fire marshal." (Defendants' Brief, p. 7.) Further, the defendants argue that neither Kanute nor Dyno applied to the local fire marshal for a hearing on the suspension, nor did either of them appeal the suspension to the DPS commissioner, nor did either of them apply to the DPS commissioner to have the suspended permit reissued. Consequently, the defendants conclude that "[o]nly when an appeal of the suspension and an application for reissuance of the suspended permit had been denied by both the local fire marshal and the Commissioner of Public Safety would Kanute and Dyno have exhausted their administrative remedies and be entitled to prosecute this appeal." (Defendants' Brief, pp. 7-8.)
The defendants' argument is meritless. The defendants fail to explain why Kanute and Dyno's alleged failure to exhaust their administrative remedies should prevent FRM and RA from filing this appeal with the Superior Court. (Emphasis added.) Further, the defendants cite to neither statutory provisions nor case law to support their argument.
II. Whether either Kanute or Dyno is an indispensable party to this appeal.
The defendants also argue that Kanute, as the "person who had CT Page 3811 the right and qualifications to apply for the [blasting] permit and to contest its suspension[,] is an indispensable party to the appeal." Further, the defendants argue that such a jurisdictional defect requires that the court dismiss the appeal. Neither Kanute nor Dyno are indispensable parties to this appeal, and the plaintiffs, FRM and RA, had the authority to bring this appeal, pursuant to General Statutes § 29-355.
A plaintiff's failure to join a party as an indispensable party does not implicate a trial court's subject matter jurisdiction. Hilton v. New Haven, 233 Conn. 701, 721-22,661 A.2d 973 (1995), citing Fong v. Planning Zoning Board ofAppeals, 212 Conn. 628, 634-36, 563 A.2d 293 (1989); see also General Statutes § 52-108[2]; Practice Book § 100[3]. "Nevertheless, a court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome. Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience." (Citations omitted; internal quotation marks omitted.) Hilton v. New Haven, supra, 233 Conn. 722, citing Gaudio v. Gaudio, 23 Conn. App. 287,305-06, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471
(1990). "Joinder of indispensable parties is mandated because due process principles make it essential that such parties be given notice and an opportunity to protect their interests by making them a party to the action." (Brackets omitted; internal quotation marks omitted.) Hilton v. New Haven, supra, 233 Conn. 722-23, citing Fong v. Planning Zoning Board of Appeals, supra,212 Conn. 634.
In the present case, Gravius sent Arthur Sibley, Jr., of Dyno, a letter dated October 21, 1994, in which he stated that based on the advice of Francis Collins, counsel to the Brookfield Zoning Commission, and upon confirmation by Town Attorney William McNamara, he had suspended Dyno's blasting permit for FR's location at 5 North Mountain Road because it violated Brookfield Zoning Regulations § 242-302. (ROR, Item 26.) Gravius continued that the suspension of the blasting permit began at noon on October 21, 1994. (ROR, Item 26.) Dyno and Kanute are not indispensable parties to this appeal because the October 21, 1994 letter gave them their "notice and an opportunity to protect CT Page 3812 their interests" in this appeal. Further, neither Kanute's nor Dyno's "interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience."
Additionally, General Statutes § 29-355 provides, in pertinent part, that "[i]f any person considers himself aggrieved by the doings of . . . the fire marshal . . . he may apply, within thirty days, to the superior court, which may grant appropriate relief. . . ." When Gravius suspended Kanute's blasting permit on October 21, 1994, he suspended Kanute's ability to discharge explosives for Dyno at the Fairfield Resources quarry. Consequently, FRM and RA no longer had a licensed blaster working at the FR quarry. Therefore, FRM and RA, as well as Kanute and Dyno, were aggrieved by Gravius' suspension of Kanute's blasting permit. Thus, the plaintiffs, FRM and RA, as "any person[s]" considering themselves aggrieved by the doings of the fire marshal under General Statutes § 29-349, could "apply" to the Superior Court to appeal Gravius' suspension of Kanute's blasting permit.
III. Whether Gravius' suspension of Dyno's blasting permit violated the plaintiffs' right to due process.
General Statutes § 29-349(e) provides, in pertinent part, that "[a]ny license or permit issued under the provisions of this section may be suspended or revoked by the issuing authority for violation by the licensee or permittee of any provision of law or regulation relating to explosives or conviction of such licensee or permittee of any felony or misdemeanor." Further, the Connecticut Department of Public Safety's Regulations §29-349-114 provides that "[a]ny license or permit issued in accordance with these regulations may be revoked at any time by [the] State Fire Marshal for good cause." General Statutes §29-349(e) and the DPS Regulation § 29-349-114 complement each other. Specifically, General Statutes § 29-349(e) provides that whoever issued the license or permit may suspend or revoke the license or permit. In addition, DPS Regulations §29-349-114 provides the State Fire Marshal with the authority to revoke a license or permit, when he did not issue the permit or license, if he can demonstrate good cause for his action. Thus, in the present action when Gravius suspended the blasting permit on October 21, 1994, he acted pursuant to his authority under General Statutes § 29-349(e). CT Page 3813
General Statutes § 4-166 (1) defines an agency as "each state board, commission, department or officer authorized by law to make regulations or to determine contested cases, but does not include either house or any committee of the general assembly, the courts, the Council on Probate Judicial Conduct, the governor, lieutenant governor or attorney general, or town or regional boards of education, or automobile dispute settlement panels established pursuant to section 42-181." General Statutes § 29-1b provides that "[t]here shall be a department of public safety. The department head shall be the commissioner of public safety, who shall be appointed by the governor . . . ." Further, General Statutes § 4-38c provides that "[t]here shall be within the executive branch of state government the following departments: . . . department of public safety . . . ." General Statutes § 4-38c. General Statutes § 29-349(a) also provides that "[t]he commissioner of public safety shall have exclusive jurisdiction in the preparation of and may enforce reasonable regulations for the safe and convenient storage, transportation and use of explosives and blasting agents used in connection therewith. . . ." Therefore, the DPS is a state agency.
Further, "[w]here local officials are in a principal-agent relationship with a state officer and are delegated the duty to perform what is mainly a state function and duty under the supervision of the state officer or agency, . . . the decision made is essentially a decision of the state agency . . ."McCarthy v. Town of Fairfield, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 285713 (October 15, 1993, Fuller, J., 8 CSCR 1153) (citing Connecticut Air Service. Inc. v.Danbury Aviation Commission, 211 Conn. 690, 696-97, 561 A.2d 120
(1989)); Matthies v. Shellfish, Superior Court, judicial district of New Haven at New Haven, Docket No. 326098 July 15, 1992, Sullivan, J.). Therefore, Gravius is an agent of the DPS, although the plaintiffs dropped the DPS commissioner from their revised appeal. Thus, an appeal of Gravius' suspension of Dyno's blasting permit on October 21, 1994 constitutes an appeal from a state administrative agency.
General Statutes § 4-185(b) provides that "[n]otwithstanding any other provision of the general statutes to the contrary in existence on July 1, 1989, this chapter [the Uniform Administrative Procedures Act (UAPA)] shall apply to all agencies and agency proceedings not expressly exempted in this CT Page 3814 chapter." General Statutes § 4-186 lists the agencies and agency proceedings exempted from the UAPA.[4] Neither the DPS nor its proceedings are exempted from the UAPA, pursuant to General Statutes § 4-186. Therefore, the UAPA applies to the DPS. Consequently, the DPS, as a state agency, and Gravius, as an agent of the DPS, are governed not only by General Statutes §29-349 et seq., but also by the UAPA.
General Statutes § 29-349(e) provides, in pertinent part, that "[s]uspension or revocation of a license shall automatically suspend or revoke the permit and the suspension or revocation ofa permit shall automatically suspend or revoke the license." (Emphasis added.) Meanwhile, General Statutes § 4-182(c) provides that "[n]o revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to showcompliance with all lawful requirements for the retention of thelicense. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action." (Emphasis added.) General Statutes § 4-182(c).
In Dadiskos v. Connecticut Real Estate Commission, 37 Conn. App. 777,657 A.2d 717 (1995), the plaintiff Dadiskos appealed pursuant to General Statutes § 4-183 from the trial court judgment dismissing the administrative appeal she had brought. "The plaintiff's administrative appeal was from a decision of the defendant state real estate commission, revoking her real estate broker's license pursuant to General Statutes § 20-323."[5]
Id., 778. The court noted in its opinion that "[i]t is not disputed that the plaintiff's license was revoked pursuant to General Statutes § 20-323, and that the provisions of that section are of a summary nature relieving the commissioner of the obligation to conduct a hearing upon notice of conviction of a crime as enumerated in subdivision (8) of § 20-320 or conviction of an offenses like those enumerated." Id., 782. Consequently, the court held that General Statutes § 4-182(c) does not require that the commission hold a hearing. Id. Rather, the court stated that General Statutes § 4-182(c) "requires notice by mail giving the licensee the facts or conduct warranting the action proposed, and gives that licensee `an opportunity to show compliance with all lawful requirements for CT Page 3815 the retention of the license.' This section of our statutes clearly deals with a situation in which a revocation, suspension, annulment or withdrawal of any license is contemplated. The opportunity for a showing of compliance may be by conference or otherwise and does not constitute a hearing." Id., 782-83.
In PARCC Inc. v. Commission on Hospitals Health Care,235 Conn. 128, 129, 663 A.2d 992 (1995), the court stated that the "dispositive issue in this appeal is whether the denial by the defendant, the commission on hospitals and health care, of the request by the plaintiff, PARCC, Inc., for reauthorization of the construction of a planned ten bed expansion of its nursing home facility (facility) was a final decision of an administrative agency in a contested case under the Uniform Administrative Procedure Act (UAPA). . . ." "The trial court determined that the defendant's decision was not a final decision in a contested case, and therefore, was not appealable." Id., 130. The plaintiffs, however, claimed that the defendant's denial of its request for reauthorization constituted the revocation of a license, as defined in the UAPA. Id.
Upon determining that the plaintiff's license was revoked, the court held that the "defendant, therefore, was required by the UAPA to afford the plaintiff notice and an opportunity for a hearing before such license was revoked." Id., 142. The court, however, did not expound further upon what procedures were necessary "to afford the plaintiff notice and an opportunity for a hearing before such license was revoked."
Thus, in view of Dadiskos v. Connecticut Real EstateCommission, supra, 37 Conn. App. 777, and PARCC, Inc. v.Commission on Hospitals Health Care, supra, 235 Conn. 128, it is uncertain whether an agency needs to provide an opportunity for a hearing prior to suspending or revoking a license, or an agency need only provide an opportunity for showing compliance by conference or otherwise. The court, however, does not need to answer this question to resolve this case. The court addresses the issue of whether Gravius summarily suspended the plaintiffs' blasting permit, or provided the plaintiffs with at least an opportunity for showing compliance by conference or otherwise with all the lawful requirements for the retention of the license.
In the present case, Gravius granted Dyno's blasting permit application on September 27, 1994, and he provided that the CT Page 3816 blasting permit would expire on October 27, 1994. (ROR, Item 26.) Subsequently, Gravius sent Arthur Sibley, Jr., of Dyno, a letter dated October 21, 1994. In the letter, Gravius suspended Dyno's blasting permit for FR's quarry, effective at noon on October 21, 1994, because it violated Brookfield Zoning Regulations § 242-302. (ROR, Item 26.) Based on the information provided to the court in the return of record and supplemental return of record, Gravius did not provide Kanute or Dyno with an opportunity for showing compliance by conference or otherwise with the lawful requirements for the retention of the permit before he suspended Dyno's blasting permit on October 21, 1994.[6] Further, neither the return of record nor the supplemental return of record indicates that Gravius provided Kanute or Dyno with such an opportunity after he suspended Dyno's blasting permit. Additionally, Gravius did not find that public health, safety, or welfare imperatively required emergency action, nor did he incorporate such a finding in his suspension letter to Dyno. Therefore, Gravius summarily suspended Dyno's blasting permit in violation of General Statutes § 4-182(c). Consequently, the court sustains the plaintiffs' appeal and orders Gravius to fulfill the prescriptions of General Statutes § 4-182(c)
IV. Whether this court lacks jurisdiction to consider this appeal because the court lacks the power to grant the plaintiffs' requested relief.
In the plaintiffs' second amended appeal, they request that the court: (1) reinstate the blasting permit; (2) reverse Gravius' decision to suspend the blasting permit; and (3) order the payment of plaintiffs' attorney's fees and costs.
In response to the requested relief, the defendants argue that "[i]t is a general rule that the court lacks jurisdiction to consider an appeal where no practical relief can flow to the appellant from the decision of the court." (Defendants' Brief, p. 9.) Specifically, the defendants argue that because the blasting permit expired on October 27, 1994, the court cannot reinstate the blasting permit. Additionally, the defendants argue that because an administrative appeal is a statutory remedy and neither General Statutes § 29-355 nor General Statutes §4-183 allows the recovery of attorney's fees, the plaintiffs cannot recover attorney's fees in this appeal.
The defendants are correct when they argue that Dyno's blasting permit expired on October 27, 1994, and therefore this CT Page 3817 appeal is moot. "Mootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Citations omitted; internal quotation marks omitted.) Ayala v. Smith, 236 Conn. 89, 93, ___ A.2d ___ (1996).
However, this court may rely "on the well established exception to the mootness doctrine for issues that are capable of repetition, yet evading review" to resolve the defendants' mootness argument. (Internal quotation marks omitted.) Ayala v.Smith, supra, 95. "Our [Supreme Court's] cases reveal that for an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will rise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." Id.
In the present case, all three requirements of the "capable of repetition, yet evading review" exception have been met. First, Gravius suspended Dyno's month long blasting permit six days before it expired on October 27, 1994. Therefore, when the plaintiffs appealed Gravius' suspension of Dyno's permit, alleging that they were harmed by the suspension of Dyno's blasting permit for their quarry, the suspension of the month long blasting permit is "by its very nature . . . of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." Second, because FR operates a quarry which requires blasting to harvest rocks for sale, and Gravius is the fire marshal who issues blasting permits for up to a year in duration, there is "a reasonable likelihood that the question presented in CT Page 3818 the pending case will rise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate." Third, because the activities occurring at FR's quarry have led to numerous town meetings in Brookfield, and also have given rise to a multitude of contested and litigated cases in the Connecticut court system, the activities and especially the blasting at FR's quarry has "some public importance." Accordingly, this court possesses subject matter jurisdiction over this appeal.
Meanwhile, General Statutes § 29-355 does not explicitly provide that the plaintiffs may recover attorney's fees for this appeal. Pursuant to General Statutes § 4-183, the plaintiffs may not recover attorney's fees. General Statutes § 4-183(1) provides, in pertinent part, that "[n]o costs shall be taxed against the state, except as provided in section 4-184a." General Statutes § 4-184a(b) provides that in "any appeal by an aggrieved person of an agency decision taken in accordance with section 4-183 . . . the court may, in its discretion, award to the prevailing party . . . reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken without any substantial justification." In the context of this appeal, this court, has not reached the issue of whether Gravius' suspension of Dyno's permit was "undertaken without substantial justification." Therefore, the plaintiffs are not entitled to reasonable fees and expenses in this appeal.
V. Whether Gravius correctly suspended Dyno's blasting permit.
In addition, Gravius violated the requirements of General Statutes § 29-349(e) when he suspended Dyno's blasting permit on October 21, 1994. According to Gravius' letter to Arthur Sibley, Jr., Gravius suspended Dyno's blasting permit because FR was in violation of Brookfield Zoning Regulations § 242-302. FR is the owner of the quarry where Dyno had a permit to blast. Therefore, FR is the quarry owner, Kanute is the licensee and Dyno is the permittee. Thus, FR's violation of Brookfield Zoning Regulations § 242-302, was not a "violation by the licensee or permittee," pursuant to General Statutes § 29-349(e). Accordingly, Gravius incorrectly suspended Dyno's blasting permit, based on FR's violation of Brookfield Zoning Regulations § 242-302, because FR's violation was not a "violation by the CT Page 3819 licensee or permittee of any provision of law or regulation relating to explosives . . . ."
Conclusion
The defendants' argument that the plaintiffs failed to exhaust their administrative remedies is without merit. Neither Kanute nor Dyno are indispensable parties to this appeal, and the plaintiffs, FRM and RA, had the authority to bring this appeal pursuant to General Statutes § 29-355.
Further, based on the information provided to the court in the return of record and the supplemental return of record, Gravius did not provide Kanute or Dyno with an opportunity for showing compliance with the lawful requirements for the retention of the blasting permit by conference or otherwise before or after he suspended Dyno's blasting permit on October 21, 1994. Therefore, Gravius' actions violated General Statutes §4-182(c). Accordingly, the court sustains the plaintiffs' appeal, and orders Gravius to fulfill the prescriptions of General Statutes § 4-182(c).
Additionally, because in the present case all three requirements of the "capable of repetition, yet evading review" exception to the mootness doctrine have been met, this court possesses subject matter jurisdiction over this appeal. Also, because this court has not reached the issue of whether Gravius' suspension of Dyno's permit was "undertaken without substantial justification," the plaintiffs are not entitled to reasonable fees and expenses.
Regarding the merits of this appeal, Gravius incorrectly suspended Dyno's blasting permit, based on FR's violation of Brookfield Zoning Regulations § 242-302, because FR's violation was not, pursuant to General Statutes § 29-349(e), a "violation by the licensee or permittee of any provision of law or regulation relating to explosives . . . ."
Leheny, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 3844